**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| AMERICAN NATIONAL RED CROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　　　　Civil No. 07-209 (RCL) |
| | ) |
| VINTON ROOFING COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

_____ )

**MEMORANDUM OPINION**

*I. Introduction*

This matter comes before the court on plaintiff's Motion [17] for Summary Judgment (on liability alone).  The plaintiff American National Red Cross ("plaintiff") entered into a contract with Vinton Roofing Company, Inc. ("Vinton" or "defendant") to fix and replace an existing roof on a Red Cross building in Roanoke, Virginia. (Pl. Mem. 2, ¶ 1.)  In sum, the plaintiff maintains, "[a]t the close of a day's work, Vinton failed to secure the work-in-progress to prevent leaks in the event of rain.  It rained, and the Red Cross suffered significant property damage." (Pl. Mem. 1.)

Because there is no genuine issue of material fact barring summary judgment in favor of the plaintiff, plaintiff's motion for summary judgment (on liability alone) shall be granted.

*II. Analysis*

The plaintiff concedes that there is a dispute with regard to the amount of damages to be awarded in the instant case.  In accordance with Federal Rule of Civil Procedure 56, "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine

issue on the amount of damages." Fed. R. Civ. P. 56(d)(2). Summary judgment is appropriate

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Mills v. Winter*, 540 F. Supp. 2d 178, 183 (D.D.C. 2008)

(Friedman, J.); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

To determine if there is any genuine issue of material fact, this court is to view the

record, facts, and reasonable inferences in the light most favorable to the non-moving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). A genuine issue of material fact is

one which could affect the outcome of the litigation. *Celotex*, 477 U.S. at 322; *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Applicability of Defendant's Responses to Plaintiff's Requests for Admissions Involving Defendant Vinton's Insurer, Harleysville Insurance

Harleysville Insurance ("Harleysville") investigated the circumstances of the roof leak on

behalf of defendant Vinton. Vinton revealed in its amended responses to plaintiff's

interrogatories that, in essence, Harleysville came to the conclusion that the "roofer [Vinton]

poorly staged his work, rains came, roof not waterproofed, water entered Red Cross Bldg along

80' unprotected seam" (Def.'s Am. Resp. to Pl.'s Req. for Admis., No. 15.)

However, the defendant asserts that these pre-litigation admissions involving the

Harleysville claims files ("Harleysville Admissions") are inadmissible hearsay evidence and that

they are protected by the work product privilege. As such, defendant argues that the Harleysville

Admissions may not be taken into consideration by this Court in ruling on the plaintiff's

summary judgment motion.

The plaintiff, on the other hand, contends that "statements, and the findings and conclusions of Vinton's insurance investigators concededly acting 'on behalf of' Vinton, are admissible against Vinton" (Pl.'s Mot. [170] for Summ. J., 13-14.)  The plaintiff thus maintains that it is neither work product nor inadmissible hearsay.

A. 1. Hearsay

Hearsay is generally defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  Harleysville's conclusions about the roof leak are being offered to prove the truth of the matter asserted, a truth the plaintiff is seemingly relying upon.  Thus, the Harleysville Admissions are inadmissible hearsay, unless one of the exceptions to the hearsay rule applies.

Although the plaintiff has not specifically addressed applicable exceptions, plaintiff continually has referenced Harleysville as Vinton's "agent" and as acting "on behalf of" Vinton, seemingly attempting to establish that Harleysville is in fact Vinton's agent.  An exception to the general hearsay rule is that "a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay. Fed. R. Evid. 801(d)(2)(D).  However, Vinton never concedes that Harleysville was ever acting as Vinton's agent, stating, "Harleysville is not a party to this law suit, nor was Harleysville an agent, or an unauthorized representative of Vinton." (Def. Resp. to Pl.'s Mot for Summ. J., 17.)

Therefore, as trier of *fact*, this Court may not consider—in ruling on plaintiff's motion for summary judgment (on liability alone)—defendant's admissions involving the Harleysville claims files.  Indeed, "the fact that Vinton was asked to admit that portions of the Harleysville

claims file existed does not make those sections admissible." (Def. Resp. to Pl.'s Mot. for Summ. J., 16.)

Furthermore, evidence of liability insurance—whether a person or company was or was not insured at the time of an incident—is generally inadmissible.  Indeed:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Fed. R. Evid. 411.  The issue in the instant motion for summary judgment, however, deals with the admissibility or inadmissibility of Harleysville's findings, many of which have been admitted in Defendant's Amended Responses to Plaintiff's Request for Admissions.  The Court need not rule on this issue at this stage of the litigation.  However, as the plaintiff notes, "[i]f liability were to be tried by a jury, the 'insurance' question would be handled either by a limiting instruction or by assuring that Harleysville was not identified as an insurance company." (Pl.'s Reply in Supp. of Pl.'s Mot. For Summ. J., 6.)  While a possibility, this can and will be decided at a later date if the need arises.

A. 2. Work Product Doctrine

With regard to the defendant's claim that the Harleysville Admissions are protected as "work product," plaintiff is correct that this defense fails.  The work product doctrine provides that, generally, information produced or obtained in anticipation of litigation is inadmissible discovery. *See generally*, *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385.

"The privilege does not apply to documents prepared in the regular course of the compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation." *Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C. 1987) (Richey,

J.).  Harleysville compiled their information about the roof leak during the normal course of

business, and nearly a full year before the commencement of this litigation. (Pl.'s Mot. for

Summ. J., 13.)  Therefore, it is not protected as work product because Harleysville conducted its

investigation into the roof leak in the normal course of business—as defendant's insurer—and

not in the anticipation of litigation.

However, even though the Harleysville Admissions are not protected as work product, it

is because the Admissions are inadmissible hearsay that they will not be considered by this Court

in ruling on plaintiff's motion for summary judgment (on liability alone) at this time.

### III. Plaintiff's Motion for Summary Judgment (On Liability Alone) Shall Be Granted

A genuine issue of material fact is one which could affect the outcome of the litigation.

*Celotex*, 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Because it

is the opinion of this court that the defendant has provided no genuine issue of material fact that

could reasonably affect the outcome of this litigation, the plaintiff's motion for summary

judgment (on liability alone) shall be granted.

On the clear terms of the contract entered into by the plaintiff and defendant, the Vinton

roofers expressly accept liability as to the safety of persons and property involved.  Indeed, [t]he

Contractor [Vinton] will promptly remedy damage and loss to the Red Cross property caused in

whole or in part by the Contractor…."  (Pl. Mem. 3, ¶ 3.)  As is explained in this Opinion, the

damage to the Red Cross building after the rainstorm was certainly caused at least "in part" by

Vinton.  On the face of the contract, Vinton is liable for the applicable damage to the Red Cross

building.

Although there is a factual dispute with respect to the amount of damages, no genuine

issue of material fact will bar judgment is favor of the plaintiff on liability alone.  Both the terms

of the contract and industry standards require the roofers to properly seal the work-in-progress roof before day's end.  The contract required the defendant to work in accordance with the "highest standards" of the industry and, as is further discussed below, failure to adequately waterproof the roof deviates from this standard as it was Vinton's duty to ensure that the roof was watertight prior to leaving the site for the day.

## IV. Defendant Has Offered No Adequate Defense as the "Act of God" Defense Fails

Because defendant's "Act of God" defense fails in the instant case, they have not offered up a valid defense to preclude summary judgment.  The defendant's actual work on the roof, the adequacy of their waterproofing, and the conscious decision to work on the roof despite weather forecasting a slight chance of rain constitutes a "human element," effectively precluding a valid "Act of God" defense.  Indeed, "'[a]n Act of God' is the result of the direct, immediate and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention, and is of such character that it could not have been prevented or avoided by foresight or prudence." *Watts v. Smith, et al.*, 226 A.2d 160, 162 (D.C. 1967).  The adequacy of the waterproofing measures taken by the Vinton roofers, such as the amount of time needed to properly seal the roof prior to leaving the work site for the evening, is a human element.

Case law is fairly clear that human interference or influence on what could otherwise be considered an act of God (such as a rainstorm) precludes an "Act of God" legal defense.  The affirmative defense does not protect individuals who, negligently or otherwise, subject others (such as the Red Cross) to the effects of nature.  Indeed, a case defendant relies on states the following:

> [I]n determining liability for injury or loss claimed to have been caused by the act of God, when the effect, the cause of which is to be considered, is found to

be in part the result of the participation of man, whether it be from active intervention or neglect, the whole occurrence is thereby humanized and removed from the operation of the rules applicable to the acts of God.

*Fred Drew Constr. Co. v. Mire, et al.*, 89 A.2d 634, 636 (D.C. 1952).  As the analysis below will explain, Vinton left the work site prior to ensuring that the roof was watertight.  This constitutes "in part the result of the participation of man" and/or "neglect" and thus "the whole occurrence is thereby humanized and removed from the operation of the rules applicable to the acts of God." *Id*.

On the clear terms of the contract entered into by the plaintiff and defendant, a fairly commonplace "act of God," such as a rainstorm, is a risk assumed by the roofing company. Indeed, as the contract expressly states, damage incurred during or as a result of the roofing is to be borne by Vinton.  The contract states, for instance: "The Contractor [Vinton] will promptly remedy damage and loss to the Red Cross property caused in whole or in part by the Contractor..." and that Vinton "acknowledges that it has investigated and satisfied itself as to the conditions affecting the project, including but not restricted to those bearing upon...uncertainties of weather…." (Pl. Mem. 3, ¶ 3.)

Rainstorms are certainly a basic assumption of a contract entered into by a roofing company, as securing the roof at the end of a work day is one of the most important and commonplace duties of a roofer.  A co-owner of Vinton, Gary Payne ("Payne"), provided in deposition testimony that a "seam" implemented by the roofers to secure the new and old portions of the roof "come [sic] apart." (G. Payne Dep., 41.)  Payne was unsure as to whether the roofers had used enough glue to properly secure the seam. (G. Payne Dep., 103.)  In addition, Payne testified that he was aware of the weather, forecasting "like a ten percent chance of late

thunderstorms" and that "[e]very day you have high humidity, you have a chance of thunderstorms." (G. Payne Dep., 68–69.)

 While it is impractical to expect a roofing company not to roof upon the slightest chance of rain, it is not impractical to expect roofers to secure their workspace in the event of thunderstorms so as to protect the client.  Payne further testified that "it takes several hours for the glue to set up solidly, to become watertight" and that he does not know "whether it had enough time or not" to do so. (G. Payne Dep., 42.)  As owner, Payne had a duty to ensure the watertight seal—whether by applying the glue earlier in the work day to allow enough time for it to set properly or by staying at the work site later to ensure a safe seal.  This presents a human element that ultimately led to the roof leak and the initiation of this litigation.

 Indeed, Vinton's own expert retained for this litigation, Joseph D. Shuffleton ("Shuffleton"), stated in deposition testimony that he agrees with the statement, "It is normal to ensure that a roof is made watertight prior to a contractor leaving the site for a day." (Shuffleton Dep., 16).  Shuffleton said of the statement, "I don't disagree with that. That is common practice. Normal practice." (*Id*.) Thus, Vinton's expert does not disagree that it was Vinton's duty to ensure that the roof was watertight prior to leaving the site for the day.

 In addition, Shuffleton testified, "I think that the standard of the [roofing] industry is to make things watertight prior to leaving the site, as I said before."[1]  This statement, made by Vinton's own expert, contradicts a primary premise of Vinton's opposition to plaintiff's summary judgment motion—that "Vinton followed, and performed its work in accordance with the highest industry standards." (Def.'s Resp. to Pl.'s Mot. for Summ. J., 14.)

---

[1]Shuffleton then provided an example of the "limits" to ensuring a watertight roof prior to leaving the work site.  He cited a "tornado" as a natural act for which a roofer is not responsible, and a "light sprinkle" as one for which the roofer should certainly be responsible. (Shuffleton Dep., 18.)

The defendant further cites to the case of *Gleeson v. VA Midland Ry. Co.* to attempt to draw a comparison with the so-called "freak" thunderstorm in the instant case. The Supreme Court notes in *Gleeson*, "Extraordinary floods, storms of unusual violence, sudden tempests, severe frosts, great droughts, lightnings, earthquakes, sudden deaths and illnesses, have been held to be 'acts of God'…." *Gleeson v. VA Midland Ry. Co.*, 140 U.S. 435, 439, 11 S. Ct. 859, 861 (1891). However, a rainstorm is a reasonable and foreseeable event, especially to a reputable roofing company. Vinton attempts to portray the rainstorm as substantial and sudden. However, "[m]ost courts flatly hold a rain of unusual amount is not an act of God." *Garner v. Ritzenberg*, 167 A.2d 353, 354 (D.C. 1961) (stating, further, that rain heavy enough to cause a flash flood is not an act of God); *see also Shea-S&M Ball v. Massman-Kiewit-Early*, 606 F.2d 1245, 1249 (D.C. Cir. 1979).

While rain alone might reasonably be considered an "act of God," this legal defense fails because Vinton was on notice of weather forecasting a chance of rain and Vinton left the work site prior to establishing that the roof was, in fact, watertight. These human elements remove this case from the "act of God" realm in that the damage was not "[a]n act occasioned exclusively by forces of nature without the interference of any human agency." Black's Law Dictionary 33 (6th ed. 1991).

## *V. Conclusion*

For the reasons stated above, plaintiff's motion for summary judgment (on liability alone) is granted. An Order consistent with this Memorandum Opinion is issued separately on this same date.

Signed by Royce C. Lamberth, Chief Judge, on June 25, 2009.