UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN NATIONAL RED CROSS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-209 (RCL) |
| VINTON ROOFING COMPANY, INC. | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This matter comes before the Court on plaintiff's Second Motion [29] for Summary Judgment (Damages) and defendant's Cross-Motion [31] for Summary Judgment. For the reasons set forth below, the Court will grant in part and deny in part plaintiff's second motion for summary judgment and will deny defendant's cross-motion for summary judgment.

### I. BACKGROUND

In May 2005, plaintiff, the American National Red Cross, contracted with defendant, Vinton Roofing Company, to replace the existing roof a building owned by plaintiff. At the end of the day on June 6, 2005, defendant did not properly seal the unfinished roof to prevent leaks in the event of rain. It rained that night, and plaintiff suffered serious property damage.

Plaintiff then brought suit against defendant to recover for damages stemming from the leak. Plaintiff moved for summary judgment with respect to defendant's liability, and the Court granted plaintiff's motion. (Order [21] (June 25, 2009).) The sole issue remaining is plaintiff's damages.

Plaintiff now moves for summary judgment with respect to damages. Plaintiff alleges

that there is no genuine issue of material fact in dispute as to that amount of damages to which plaintiff is entitled. Specifically, plaintiff alleges that it is entitled to $206,327.03 that it spent "for water extraction, cleaning and drying of the premises, measurement and identification of mold, removal of mold, building repairs, and business interruption." (Pl.'s Mot. at 3.)

Defendant opposes plaintiff's motion and has filed a cross-motion for summary judgment with respect to damages. Defendant alleges that it is not liable for $76,922.18 that plaintiff spent on mold remediation because the mold existed before the June 6th leak due to the extensive history of leaks on the premises. (Def.'s Opp'n at 8; Pl.'s Mot at 3.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To determine whether there is a genuine issue of material fact in dispute, the Court construes all evidence and reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute will not preclude entry of summary judgment. *Id.* at 247. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## III. ANALYSIS

Based on the evidence in the record, the Court concludes that plaintiff is entitled to

judgment as a matter of law for $129,404.85, which represents the total damages incurred by plaintiff less the $76,922.18 that plaintiff spent on mold remediation. The Court also concludes that there is a genuine issue of material fact as to whether plaintiff is entitled to damages for mold remediation. Last, the Court will award plaintiff prejudgment interest.

### A. *Plaintiff Is Entitled to $129,404.85*

Plaintiff alleges that it incurred $206,327.03 "for water extraction, cleaning and drying of the premises, measurement and identification of mold, removal of mold, building repairs, and business interruption" as a result of the June 6th leak. (Pl.'s Mot. at 3.) Of that amount, plaintiff spent $124,922.18 on remediation. (Def.'s Opp'n at 8.) The amount spent on remediation falls into two categories: money spent on mold remediation and money spent on water remediation. Plaintiff spent $76,922.18 for mold remediation and $48,000 for water remediation. (*Id.*; Pl's Reply at 5.)

Defendant concedes that plaintiff is entitled to damages for the water remediation cost of $48,000. (Def.'s Opp'n at 8.) In addition, defendant does not dispute the non-remediation costs incurred by plaintiff. Therefore, there is no dispute that plaintiff is entitled to its total alleged damages less the cost of mold remediation. Subtracting the mold remediation cost, $76,922.18, from plaintiff's total alleged damages, $206,327.03, the Court concludes that plaintiff is entitled to $129,404.85.

### B. *There Is a Genuine Issue of Material Fact as to Whether Plaintiff Is Entitled to Damages for Mold Remediation*

The contract between the parties provides that defendant "will promptly remedy damage and loss to [plaintiff's] property caused in whole or in part by [defendant.]" (Compl. ¶ 7.) This

Court previously found that the damages resulting from the June 6th leak were caused at least "in part" by defendant. (Mem. Op. [20] at 5 (June 25, 2009).) The parties, however, dispute whether the mold damage was caused by the June 6th leak. This is a genuine issue of material fact that precludes entry of summary judgment for either party. Accordingly, the Court will deny the parties' motions for summary judgment with respect to mold remediation damages.

As an initial matter, the Court rejects defendant's contention that plaintiff must demonstrate by expert testimony that the mold resulted from the June 6th leak. (*See* Def.'s Opp'n at 10-16.) In support of this argument, defendant relies on personal injury case law. *See, e.g.*, *Williams v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses & Missionaries*, 924 A.2d 1000, 1003 (D.C. 2007) (stating that in personal injury cases, "expert testimony is required unless the issue of causation can be resolved within the realm of ordinary human knowledge and experience" (citation and quotation omitted)). This reliance is misplaced. Unlike in personal injury cases, expert testimony is not required to demonstrate that a leak may cause mold. Lay people with ordinary human knowledge and experience can attest to whether mold was present and growing before the leak, or whether mold did not grow until after the leak. As a result, plaintiff need not rely on expert testimony to demonstrate that the mold was caused by the June 6th leak.

Both parties make absolute arguments with respect to whether plaintiff may recover damages for mold remediation. Plaintiff argues that there was *no* active mold prior to the June 6th leak, and therefore defendant is liable for the entire cost of mold remediation. Defendant argues that there was *no* new active mold after the leak, and therefore plaintiff is not entitled to damages for mold remediation.

4

Defendant relies on the testimony of its two experts, Joseph Shuffleton and John Shepherd, to argue that the leak did not cause new mold to grow and that all active mold on the premises was pre-existent. Shufflteon and Shepherd testified that mold takes at least 72 hours to grow. (*See* Def.'s Exs. 6, 8.) Shepherd also testified that "there was no reason to believe that there was mold present in the building greater than the background levels due to the June 6th event" because of plaintiff's "aggressive" drying efforts. (Def.'s Ex. 8.) The opinions of defendant's experts rest on the assumption that the building was sufficiently dry within 72 hours of the leak to prevent new mold growth. This assumption, however, is not supported in the record. Gregory L. Whitt, who conducted the mold studies at the building after the leak, first visited the building on June 16, 2005—ten days after the leak. (Whitt Dep. 11.) During that visit, he found many areas that were wet and susceptible to mold growth. (*Id.* at 93.) In addition, he noticed visible mold in several locations. (*Id.* at 71-71.) Furthermore, defendant's expert admitted that new mold may have grown after the June 6th leak. (Shuffleton Dep. at 138-41.) Thus, a reasonable jury could conclude, as plaintiff contends, that the leak caused previously dormant mold to become active and grow.

Plaintiff relies on the testimony of Scott Royster to demonstrate that there was no active mold prior to the leak. Royster testified that mold in certain places in the building had "expanded considerably" due to the June 6th leak. (Royster Dep. at 66-67.) Notably, Royster did not state that all the active mold was new. In fact, plaintiff admits that mold was present in the building prior to the June 6th leak as a result of numerous prior leaks. (Pls's Mot. at 3.) Simply stating that this pre-existing mold was dormant, without support in the record, is a conclusory statement that does not support summary judgment. Therefore, due to the extensive history of

5

leaks at the building, a reasonable jury could conclude that active mold was present in the building prior to the June 6th leak

Accordingly, the Court concludes that a genuine issue of material fact exists as to whether plaintiff is entitled to recover $76,922.18 in damages for mold remediation. Specifically, there is a genuine dispute as to whether the June 6, 2005, leak caused mold to grow by activating pre-existing, inactive mold, or whether the pre-existing mold was active prior to the June 6, 2005, leak due to previous water leaks at the building.

### C.   *Plaintiff Is Entitled to Prejudgment Interest on $129,404.85*

Plaintiff argues that it is entitled to prejudgment interest under D.C. Code § 15-108. Section 15-208 provides that in an action "to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time it was due and payable." D.C. Code § 15-108. The interest rate, unless fixed by contract, is 6% per annum. D.C. Code § 28-3302. For a debt to be "liquidated," it must be "an easily ascertainable sum certain." *District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 731 (D.C. 2003) (quoting *District of Columbia v. Pierce Assocs, Inc.*, 527 A.2d 306, 311 (D.C. 1987)).

Here, $129,404.85 is an "easily ascertainable sum certain" because there is no dispute that plaintiff is entitled to $129,404.85. As a result, the $129,404.85 owed to plaintiff is a liquidated debt, and plaintiff is entitled to prejudgment interest on that amount. If at trial the jury concludes that plaintiff is entitled to damages for mold remediation, the Court will determine whether the plaintiff is entitled to prejudgment interest on the additional damages.

### IV.   CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and defendant's cross-motion for summary judgment is DENIED. A separate order shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 23, 2010.